670 A.2d 88

CHIJI A. OHAYIA, PLAINTIFF–APPELLANT, v. DAVID
CASS, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued December 5, 1995—Decided January 25, 1996.

Before Judges PRESSLER, KEEFE and WEFING.

*Ronald Grayzel* argued the cause for appellant (*Levinson, Axelrod, Wheaton & Grayzel,* attorneys; *Evan L. Goldman,* of counsel and on the brief).

*Stephen J. Foley* argued the cause for respondent (*Campbell, Foley, Lee, Murphy & Cernigliaro,* attorneys; *Mr. Foley,* on the brief).

PER CURIAM.

Plaintiff appeals from the entry of a judgment in favor of defendant following a jury verdict of no cause for action. We reverse and remand the matter for a new trial.

Plaintiff alleged that he was injured in an automobile accident that occurred in the evening hours of February 8, 1992 on the ramp connecting Route 4 with I–95 South. Plaintiff was returning from Columbia University, where he had played basketball with friends, to his home in Neshanic. The accident occurred at approximately 9:30 p.m. and it was snowing at the time. When plaintiff was at the top of the connecting ramp, he saw two moving vehicles in front of him. He commenced down the ramp at approximately ten miles per hour. He saw the first car apparently skid and then regain control. Plaintiff pumped his brakes. He then looked in his rear-view mirror and saw a 4–by–4 vehicle which was owned and driven by defendant. Seconds later, defendant's car struck him in the rear.

A state trooper, Michael Davis, responded to the scene and interviewed both parties. Trooper Davis did not issue tickets to either driver. Both parties were able to drive away from the accident scene. We do not set forth plaintiff's claims as to the injuries he received in this accident for they are irrelevant to the issues presented on this appeal.

Plaintiff's first argument is that the trial court erred when it refused to charge the jury in accordance with *N.J.S.A.* 39:4–89 which reads in relevant part:

The driver of a vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard to the speed of the preceding vehicle and the traffic upon, and condition of, the highway.

Defendant does not deny that plaintiff requested such a charge from the trial court during a charge conference in chambers that was not transcribed. While such conferences in chambers often prove useful in formulating a charge, we note for the future guidance of the trial court that *R.* 1:8–7 calls for the trial court, prior to closing arguments, to place its rulings on the record on any requests to charge that have been submitted to it. Such a procedure obviates any ambiguity on whether a particular request to charge was submitted. As we noted, however, defendant does not deny that plaintiff requested the trial court to include such language within its charge.

Defendant contends that the trial court was correct in its determination and relies upon *Mockler v. Russman, et al,* 102 *N.J.Super.* 582, 246 *A.*2d 478 (App.Div.1968), *certif. denied,* 53 *N.J.* 270, 250 *A.*2d 135 (1969) in support of its position. In *Mockler,* we affirmed a trial court's refusal to charge *N.J.S.A.* 39:4–89 and held there that the statute "pertains to a situation where both vehicles involved in an accident are in motion upon the highway." *Id.* at 590, 246 *A.*2d 478. Defendant here argues that plaintiff was stopped at the time of this accident since he skidded on the ramp and came to rest with his car partially obstructing the ramp. While defendant may have presented testimony to support such a factual conclusion, the plaintiff's testimony was to the contrary. Plaintiff asserted at trial that he was proceeding down the ramp at the time of the accident and was not stationary from an earlier skid. We do not consider *Mockler* to be apposite.

As we noted in *Paiva v. Pfeiffer,* 229 *N.J.Super.* 276, 551 *A.*2d 201 (App.Div.1988), this section of *N.J.S.A.* 39:4–89 simply codifies the common law and need not be explicitly mentioned to a jury. "All the jury need be told is that the driver of a vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard to the speed of the preceding vehicle and the traffic upon, and condition of the highway and that a breach of

that duty is negligence." *Paiva, supra,* 229 *N.J.Super.* at 280, 551 A.2d 201.

Here, plaintiff advanced a substantial amount of evidence to support a jury finding that defendant had in fact been following plaintiff too closely in the same lane of traffic. All witnesses agreed it was snowing prior to and during the collision and that the roads were slippery. The ramp itself had a slight downward grade. Defendant said that he was traveling approximately fifteen miles an hour and was forty feet from plaintiff's car when he started to slow his vehicle. Trooper Davis testified that he had attributed the cause of the accident to defendant not allowing enough space between the two cars to stop safely. Whether following forty feet behind another vehicle, at a speed of fifteen miles per hour, on a snowy, slippery downward ramp at night constituted driving in a reasonably prudent manner presented a jury issue.

We are not persuaded by the trial court's apparent view that *N.J.S.A.* 39:4–89 was inapplicable because the collision occurred on a ramp, as opposed to the open highway. A motorist's obligation to maintain a reasonably safe distance between vehicles in the same lane of traffic invokes the same safety concerns whether the vehicles are on multi-lane highways or connecting ramps.

We are satisfied that plaintiff was clearly entitled to have this principle charged to the jury and that the trial court's failure to include that concept within its final instructions was "clearly capable of producing an unjust result," *R.* 2:10–2, for it removed much of the legal underpinning of plaintiff's case.

This is particularly so, since the trial court did include within its final instructions the concept of a sudden emergency. The trial court told the jury:

> Where a person without any fault on his part is confronted with a sudden emergency; that is, is placed in a sudden position of imminent peril not reasonably to be anticipated, the law will not charge him with negligence if he does not select the very wisest course in choosing between alternative courses of action. An

honest mistake of judgment in such a sudden emergency will not of itself constitute negligence although another course might have been better and safer. All that is required of such a person is that he exercise the care of a reasonably prudent person under like circumstances. .... The law recognizes that one acting in a sudden emergency may have no time for thought and so cannot weigh alternative courses of action but must make a speedy decision which will be based on impulse or instinct. What is required of a person in such an emergency is that he act reasonably and with ordinary care under such circumstances. However, if the emergency arose in whole or in part by reason of the fault; that is, a lack of due care, or that person in the events preceding the emergency, then this rule of sudden emergency does not apply to excuse him even though his conduct during the emergency does meet the standard of reasonable care referred to.

The sudden emergency doctrine is inapplicable to this case, however. The weather at the time presented road conditions that were foreseeable. Snow accompanied by icy road patches is not a sudden emergency.

■ Plaintiff also complains of certain comments made by defense counsel in his summation. Within his argument, defense counsel stated:

DEFENDANT'S COUNSEL: You've got an accident, everybody's okay, they drive away. One visit to the family doctor two months later, courtesy of William Rabb. You've heard about the litigation explosion in our society, every new governor, every new legislature—

PLAINTIFF'S COUNSEL: Objection, your Honor. It has no relevance.

DEFENDANT'S COUNSEL: This is common knowledge, it's in the newspapers every day. It's a basis of political campaigns. I think—

PLAINTIFF'S COUNSEL: Objection.

DEFENDANT'S COUNSEL: The jury is asked to bring their common sense and experience in.

THE COURT: I overrule the objection.

DEFENDANT'S COUNSEL: Every new governor for the past 12 years has said we're going to get these lawsuits under control. New Jersey's the third most expensive state in the country to own a car.

PLAINTIFF'S COUNSEL: Your Honor, objection. That has no relevance.

THE COURT: I'm going to sustain it now.

DEFENDANT'S COUNSEL: All right. You just use your common sense, your own understanding of this lawsuit in light of your understanding of human nature.

We find these remarks to be improper and troubling. That various proposals had been discussed in newspapers to contain the costs of litigation was completely irrelevant to whether this defen-

dant negligently drove his vehicle on February 8, 1992. Plaintiff's first objection should have been sustained and the jury clearly and forcefully told to disregard the comments. We recognize that the merits of plaintiff's claim for damages was hotly contested at trial. Plaintiff was entitled, however, to have his claim decided on its merits and not subjected to such extraneous influences.

■ Plaintiff complains of one final remark within defendant's summation.

> But Trooper Davis, for whatever reason, took sides in this case and he called Greg (sic) inattentive, even though everybody in Greg's car said because of the weather he was driving slowly and paying closer attention.

Plaintiff complains that through this comment, defense counsel sought to remind the jury, subtly, that both plaintiff and Trooper Davis are African–Americans and the only two African–Americans involved in this matter. Plaintiff made no objection to this remark at the time it was made. Although the remark could be interpreted in that manner, the comment supports other interpretations as well. We decline, without more, to attribute such base motives to defense counsel.

The matter is reversed and remanded for new trial, consistent with this opinion.